FRANK BERNARD BLACIK v.
CANCO DIVISION-AMERICAN CAN COMPANY.

156 N. W. (2d) 239.

February 16, 1968—No. 39,775.

---

[8] See, § 630.25, footnote 4, *supra;* § 628.19, footnote 2, *supra.* See, also, State v. Jansen, 207 Minn. 250, 290 N. W. 557.

*Firestone, Fink, Krawetz, Miley & O'Neill* and *James C. Noonan,* for appellant.

*A. Laurence Davis, Samuel L. Hanson,* and *Briggs & Morgan,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order of the municipal court of St. Paul denying plaintiff's motion for a new trial or judgment notwithstanding the verdict.

Plaintiff, Frank Bernard Blacik, entered the employment of defendant, Canco Division-American Can Company, on or about June 14, 1933, at St. Paul. He testified that at that time there was a discussion between an agent of defendant and himself regarding certain employee benefits; that vacation plans were discussed; that it was explained that employees were to work a certain time before becoming eligible for a vacation; and that it was plaintiff's understanding that vacations were deferred for a year. He did not recall that he received any vacation between the time he commenced work in June 1933 and June 1934 but said he received some vacation after he had been with defendant a year.

In 1949 plaintiff was transferred by defendant to St. Louis, where he remained until 1955. He worked at an hourly rate from 1933, except as interrupted by military service, until April 1, 1950, when he was promoted to assistant foreman and became a salaried, supervisory employee. Sometime after plaintiff was employed in 1933 he became a union member, but as a supervisory employee he withdrew from the union.

In 1955, plaintiff was transferred back to St. Paul and in 1960 was transferred to Indianapolis. He remained a supervisory employee until he voluntarily terminated his employment in July 1963, effective August 2, 1963.[1]

In this action plaintiff claims benefits of two kinds: (1) An additional

---

[1] On June 12, 1963, plaintiff advised defendant's plant manager that he was retiring on his 30th anniversary with defendant company. At his employer's request he continued through the first week of July 1963. Plaintiff

retirement benefit equal to 2 months' pay, claimed to be payable to certain employees who retired between October 1, 1962, and December 31, 1963; and (2) vacation pay.

At the close of plaintiff's evidence the trial court directed a verdict in favor of the defendant on plaintiff's retirement-benefit claim, and at the close of all the evidence it directed a verdict for defendant on the vacation-pay claim.

■ Plaintiff argues that the trial court erred in directing a verdict for the defendant on the issue of separation pay or additional retirement benefits. He contends that the question of whether or not he was entitled to the 2 months' leave pay should have been submitted to the jury.

It is apparent that plaintiff bases his claim for additional retirement benefits upon two letters or memoranda directed to all salaried employees, one of which was received by plaintiff prior to the termination of his employment. It is his position that the plan was under consideration while he was still employed by the defendant. The first memorandum (plaintiff's exhibit B), dated September 28, 1962, contained a general description of a proposed expansion in salaried employees' benefits. The memorandum indicated that the information was preliminary, incomplete, and unofficial since the benefits were subject to government approval. It described in general terms a proposed leave-of-absence benefit to those employees who had 15 years or more of accredited service as of January 1, 1964. Plaintiff has made no claim here that he was entitled to any leave-of-absence benefits.

The second memorandum (plaintiff's exhibit C), dated August 7, 1963, indicated that the proposed expanded benefit plan for salaried employees was not yet approved, but went on to describe the additional retirement benefits included in that plan. It stated in part that those employees who were retired on or after October 1, 1962, but prior to December 31, 1963, who have not received leave or leave allowance prior to their retirement and who were otherwise eligible would receive 2 months' pay at their salary level at the time of their retirement, which

testified that he received a total of 3 weeks' vacation pay after he left the company in July 1963.

would be paid during the first pay period of 1964. It is plaintiff's claim that he is entitled to this 2 months' retirement pay.

Plaintiff testified that the benefits available to salaried supervisory employees generally corresponded with those made available to production workers through union negotiations. In this connection the 1962 union contract introduced into evidence by plaintiff provided:

"27.3  An Employee who shall have completed 15 years of Accredited Service on or before October 1, 1963, and is actively employed in 1963 or thereafter shall become entitled to an initial Vested Leave and Leave Allowance as of October 1, 1963 (Vesting Date). Such an Employee shall become entitled to additional Vested Leaves and Leave Allowances every 5 years after that date, *provided he is actively employed on or after the applicable subsequent Vesting Date* and has at least 15 years of Accredited Service when he is thus actively employed.

"Leave Allowances shall be granted to all employees who shall have retired on pension under the Pension Agreement between October 1, 1962 and September 30, 1963, but shall be payable, as of January 1, 1964." (Italics supplied.)

There was no evidence that the benefits proposed in the September 28, 1962, and August 7, 1963, letters had become effective when plaintiff terminated his services with defendant on August 2, 1963. He testified that he had no knowledge of the plan described in the letters and he did not know if it ever became effective.[2] He said that he knew of one employee who received benefits but he did not know if he got them under the plan under consideration or some other plan. He knew only that the employee retired at 62 years of age. Plaintiff was 49 when he terminated

---

[2] Plaintiff, while testifying, read into the record the second paragraph of defendant's letter dated August 7, 1963: "I regret that we [defendant] still are not able to provide you without qualification all provisions of the plan. This is because of required Federal tax rulings, as yet not received, which if unfavorable, will require considerable alteration of the plan to eliminate a severe tax burden for each eligible employee. At this time, however, we can let you know the basic parts of the program as submitted for Treasury Department ruling, and we will proceed with all plan provisions to the extent possible prior to final approval."

his employment with defendant. He testified that on or about the time he quit, July 12, 1963, he had a talk with defendant's plant manager who, as he recalled, told him he was too young to retire and that he had to be at least 55 years old. As a supervisory employee, plaintiff said that he knew the requirements for employees under defendant's retirement plan for salaried employees, but he would not say flatly that such an employee had to be 65 years old to retire under the normal retirement plan. He did know, however, that the provisions for early retirement of a salaried employee required that he be at least 55 years of age. He said that he was not claiming in this action that defendant had denied him any right regarding annuity benefits after age 65 but his claim was only for the 2 months' separation pay.

It appears undisputed from the record here that plaintiff was entitled to certain other benefits under defendant's retirement plan for salaried employees upon termination of his employment prior to retirement. He could withdraw his contributions, totaling $3,520.96, under the company retirement plan and a prior annuity contract with the Metropolitan Life Insurance Company or he could retain them as a deferred retirement benefit at age 65. He elected to receive the retirement benefit of $220.91 per month commencing at age 65.

The trial court directed a verdict for the defendant on plaintiff's claim for the 2 months' retirement or separation pay. It is our opinion that the trial court's decision on that issue should be affirmed because of the failure of plaintiff to furnish proof of the essential elements of his cause of action. For example, there is no evidence in the record before us that the improvements in salaried employee benefits proposed by the letters of September 28, 1962, and August 7, 1963, were ever made effective. Even if we assumed without convincing evidence that the proposed benefits became effective, plaintiff's evidence fails to show that he was eligible for them. The memorandum of August 7, 1963, states in effect that to be eligible for the 2 months' pay the person claiming those benefits would have to have at least 15 years of accredited service and retire between October 1, 1962, and December 31, 1963. Plaintiff terminated his employment on August 2, 1963, and was only 49 years of age at this time rather than the minimum retirement age of 55.

In the absence of any evidence that the proposed benefits had become effective or that plaintiff was eligible to receive them under the conditions of the plan as proposed, it is our opinion that the trial court was correct in ruling that plaintiff failed to make out a prima facie case and that a verdict should be directed for the defendant on that issue.

■ Plaintiff contends also that it was error for the trial court to grant defendant's motion for a directed verdict on the issue of vacation benefits. It is his position that there was a conflict in the testimony which, taken in the light most favorable to him, created a jury question. He states that when he commenced working for defendant (about June 14, 1933) he was told by defendant's agents that he would be entitled to vacation benefits and that it was his understanding they would be deferred for 1 year so that after 1 year's employment he would be entitled to take his vacation for the preceding work year.

Plaintiff could not recall that he received a vacation during his first year of work but said he received some vacation after being with the company a year. Upon cross-examination, plaintiff could not recall whether he had received a vacation in 1942 or 1946, but he admitted that he had a vacation each year since 1946. He testified that the pattern for supervisory salaried employees with respect to sick-benefit coverage, vacation pay, etc., followed the negotiated union pattern; but on cross-examination he admitted that he knew that there were some differences between the vacations granted salaried and hourly employees.

All three of defendant's witnesses testified that the defendant corporation did not follow a policy of deferred vacations. Mr. William Fairnington, the plant manager at defendant's Indianapolis plant at the time of plaintiff's separation from service, testified that when plaintiff was employed in Indianapolis, an employee was never granted a vacation for work done in a prior year. Mr. Leo Baer, the manager of employee benefits for defendant, whose section administers the vacation policy of the defendant, testified that a vacation cannot be postponed by an employee to a subsequent year, but that an allowance is paid the employee if his vacation is not taken. Mr. Charles Stumpf, supervisor of industrial relations at defendant's Indianapolis plant, who was responsible for the total administration of the vacation policy at the plant, testified that in

his experience no employee had received a vacation or vacation pay for work done in a prior year. According to his testimony he conferred with plaintiff with regard to his termination of employment and told him that he would be paid for the 3 weeks of vacation which he had not yet taken during 1963, but the witness denied knowledge of any further conversation with regard to any additional vacation.

At the close of plaintiff's case, defendant moved for a dismissal on the grounds that plaintiff had failed to prove a cause of action. At that time, the court denied the motion as to his claim for vacation pay, holding that plaintiff had made out a prima facie case as to this issue.

At the close of defendant's case, plaintiff moved to amend his claim to include pay for 4 weeks rather than 2 weeks of vacation, which motion was granted. Defendant then moved for a directed verdict on the grounds that there was insufficient evidence to justify a verdict in favor of the plaintiff on the issue of vacation pay. The court granted this motion, holding that when plaintiff became a supervisory employee he became subject to defendant's official written vacation plan for such employees. This plan, defendant's exhibit 2, setting forth the vacation policy for salaried employees, dated January 1, 1963, and in effect when plaintiff terminated his employment, provided:

"Vacations may not be postponed or accumulated by an employee from one calendar year to the next. All employees are to receive either the full number of vacation days for which they are eligible or vacation allowance in lieu of vacation time off * * *."

It is our opinion that under the record here a directed verdict for defendant at the close of the case on the claim for vacation pay was appropriate because plaintiff failed to establish a prima facie case by his own evidence and the evidence as a whole preponderated in defendant's favor. It will serve no useful purpose to attempt to detail all of the evidence relating to this claim. It includes the defendant's official written vacation plan and the testimony of three employees who administered that plan. When that evidence is weighed against plaintiff's vague and speculative testimony concerning his understanding of vacation rights, and his admission that he received a vacation each year since becoming

a salaried employee, we believe that the trial court was justified in granting defendant's motion at the close of all of the evidence with respect to the issue of plaintiff's vacation rights.

Affirmed.